■ Jo BACCHETTA, Appellant, v JAMES CONFORTI, JR., et al., Respondents. — Appeal from the order of the Supreme Court, New York County (Kirschenbaum, J.), entered January 5, 1984, after nonjury trial, dismissing the complaint and declaring that defendant Conforti is entitled to possession of the subject premises, is deemed an appeal from the judgment of the Supreme Court, New York County, entered March 30, 1984, in conformity with the order. Judgment, Supreme Court, New York County, entered March 30, 1984, is reversed, on the law and facts, with costs, and declaratory judgment granted to plaintiff declaring she is entitled to possession of the subject premises.

We note, initially, that plaintiff's appeal should have been taken from the final judgment. However, since the judgment solely ministerially implements the prior order granting declaratory judgment, we deem the appeal from the order an appeal from the subsequent judgment in which the order was subsumed (see *National Bank v Kory*, 63 AD2d 579).

Plaintiff was tenant of apartment 20D in the Carlton Regency in Manhattan, being converted to cooperative ownership pursuant to an eviction plan. Under applicable law and the plan presented, she had the tenant purchase rights to her apartment. The purchase was to be by execution of a subscription agreement (the purchase contract) with a down payment, with the balance due under its terms, for the shares allocable to the apartment, upon closing.

On or about December 6, 1978, the plaintiff executed a standard form subscription agreement. Under paragraph 3 of the agreement, payment was to be made in the following manner:

"[T]he balance of the Total Cash Payment shall be paid by checks to the order of 'Carlton Regency Escrow Account' as follows:

"(i) An amount equal to the difference between 10% of the Total Cash Payment and the amount paid on the signing of this Subscription Agreement payable on not less than 10 days prior written notice from Sulzberger-Rolfe, Inc. (the Selling Agent) or the Apartment Corporation after the Plan has been declared effective; and

"(ii) The balance of the Total Cash Payment by certified check or official bank check drawn on a New York City bank which is a member of the New York Clearing House System on not less than 10 days prior written notice from the Selling Agent or the Apartment Corporation specifying the Closing Date, but payment of said balance will not be requested more than 60 days before the Closing Date * * *

"Notwithstanding any other provision of the Plan or this Subscription Agreement to the contrary, any portion of the Total Cash Payment to be financed by a bank, trust company or other lending institution may be paid on the Closing Date provided that the Apartment Corporation shall have theretofore been furnished with a copy of a written commitment from a lending institution for the portion of the purchase price being financed and copies of all documents which the lending institution will require the Apartment Corporation to execute."

After payment of the sum of $358 upon execution of this subscription agreement, the balance due was $37,232, payment to be made in accordance with the terms above.

By a letter dated December 20, 1979, sent by defendants' selling agent Sulzberger, plaintiff was notified that the balance or a bank commitment of loans for such amount was due no later than January 11, 1980. Because plaintiff allegedly was in California when this letter was sent, she did not receive it until January 8, three days before the payment was due. Therefore, Sulzberger sent plaintiff a second letter, constituting a "default" notice under paragraph 6 of the subscription agreement. This provided that in the event of failure to pay any installment of the balance when due, "the Apartment Corporation may elect to cancel this Subscription Agreement by written notice to me at the address stated below, by registered or certified mail, and at the expiration of thirty (30) days after the date of mailing

thereof (unless I shall have theretofore paid the installment in full) said notice shall be effective and this Subscription Agreement shall be deemed cancelled".

At trial, plaintiff asserted that upon receipt of the December 20, 1979 letter (on January 8, 1980), she contacted one Ms. Mertes, the representative of Sulzberger, and was told that because of the backlog in processing the cooperative purchases, the time for performance contained in the December 20 letter was "waived" and an extension of time was given for payment until February 20, 1980 at the closing. Nothing was said about her being in "default" for failure to pay by January 11, the original date set. Plaintiff advised Ms. Mertes that she was going to California to obtain the necessary bank financing for the payment balance. Plaintiff also asserted that after receiving the January 11 "default" notice on January 23, in California, she again called Ms. Mertes and was advised that payment of the balance by February 20 would be sufficient. Relying upon this extension of time, plaintiff arranged for financing from a California bank by "wire-transfer" on February 19 or 20.

An officer of the Burbank Citizens Bank testified that the payment funds were available as early as January 30; that on both February 19 and 20, he was refused instructions by the sponsors' counsel as to where to "wire-transfer" the funds in New York for plaintiff's account. He further testified if counsel had given him instructions, it would have taken only a few hours to effect the transfer well in time for the closing.

Also, at trial, there was testimony from a former employee of Sulzberger that although under the January 11 letter the deadline for payment was February 11, 1980, late payment for several tenant-subscribers was authorized after February 11.

Trial Term found, *inter alia,* that although defendants' original notice required the payment balance by January 11, the defendant Sulzberger's records reflected that other tenant-subscribers were given such extensions so that payment by February 20 was sufficient so long as the manner of payment was in compliance with the terms of the subscription agreement; that the "wire-transfer" was an insufficient tender, not in compliance with the agreement, while the tender of a certified check by plaintiff one week late was untimely. Thus, Trial Term held that plaintiff was not entitled to specific performance for the sale of the apartment and granted judgment to defendants.

We find that the trial court's determination was against the weight of the credible evidence even giving defendants, as the successful parties, the benefit of every favorable inference from the evidence (see *Society of N. Y. Hosp. v Burstein,* 22 AD2d

768). Thus, the testimony clearly established that plaintiff made significant attempts to have the balance of the funds due wired from the California bank in time for the closing but that defendants' counsel refused the tender by refusing to give instructions as to where the funds could be wired. Accordingly, a formal tender by plaintiff was not required since the defendants both by act and word showed that if it were made, it would not be accepted (*Strasbourger v Leerburger,* 233 NY 55, 60). Trial Term's finding, therefore, that defendants did nothing to prevent plaintiff's performance was erroneous.

The "wire-transfer" tender, though not in strict conformance with the payment terms of the subscription agreement, was sufficient to require defendants to suggest or demand that a certified check be made from Burbank's corresponding New York bank in time for the closing. In addition, time was not made "of the essence" in the subscription agreement as to the closing date, and the evidence showed that defendants had extended the time for payment for a number of tenant-subscribers. "Ordinarily [when time is not of the essence], the law will allow the vendor and vendee a reasonable time to perform their respective obligations, regardless of whether they specify a particular date for the closing of title [citations omitted]" (*Grace v Nappa,* 46 NY2d 560, 565).

Thus, plaintiff's arrangement for a "wire-transfer" of funds on February 19 or 20, which was refused, and her subsequent proffering of payment by banker's check a short time after, which also was refused, entitled her under the circumstances herein to specific performance of the agreement. Concur — Sandler, J. P., Sullivan, Asch, Bloom and Kassal, JJ.